FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 27, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACK W., | No. 1:17-CV-03159-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 18. Attorney D. James Tree represents Jack W. (Plaintiff); Special Assistant United States Attorney Sarah Leigh Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income on July 23, 2014, Tr. 178-87, alleging disability since October 1, 2013, Tr. 188, due to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

depression, posttraumatic stress disorder (PTSD), back pain, and neck injury, Tr. 210. The application was denied initially and upon reconsideration. Tr. 105-112, 119-26. Administrative Law Judge (ALJ) Cheri L. Filion held a hearing on February 23, 2016 and heard testimony from Plaintiff. Tr. 40-81. A vocational expert appeared at the hearing, but did not testify beyond confirming that Plaintiff's past relevant work was medium exertion or higher. Tr. 40, 80. The ALJ issued a partially favorable decision on July 7, 2016 finding Plaintiff eligible for benefits as of April 22, 2016, but ineligible for benefits prior to that date. Tr. 21-34. The Appeals Council denied review on July 18, 2017. Tr. 1-6. The ALJ's July 7, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on September 18, 2017. ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 52 years old at the date of application. Tr. 179. The highest level of education he completed was the tenth grade in 1979. Tr. 49, 211. His reported work history includes some self-employment installing drywall and some temporary jobs as a laborer including loading and unloading trucks and construction. Tr. 49-52, 211. Plaintiff reported that he stopped working on September 30, 2013 due to his conditions. Tr. 210.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On July 7, 2016, the ALJ issued a decision finding Plaintiff was disabled as defined in the Social Security Act on April 22, 2016, but not disabled prior to that date.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2013, the alleged date of onset. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: cervical disc herniation at C6-7; osteophyte bridging causing foraminal stenosis; cervical degenerative disc disease; likely ulnar neuropathy; affective disorder; personality disorder; and active methamphetamine abuse. Tr. 24.

At step three, the ALJ found that prior to April 22, 2016 Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25.

At step four, the ALJ assessed Plaintiff's residual function capacity prior to April 22, 2016 and determined he could have performed a range of light work except he could "perform simple, routine tasks and have superficial public contact." Tr. 26-27. The ALJ concluded that Plaintiff was not able to perform this past relevant work. Tr. 31.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and the Medical-Vocational Rules, prior to April 22, 2016 there were other jobs that exist in significant numbers in the national economy Plaintiff could perform. Tr. 32. The ALJ concluded Plaintiff was not under a disability prior to April 22, 2016 within the meaning of the Social Security Act. Tr. 33.

The ALJ found that as of April 22, 2016, the severity of Plaintiff's impairments met the criteria for Listing 1.04 and found him disabled at step three. Tr. 33.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits prior to April 22, 2016 and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the opinion of R.A. Cline, Psy.D., (2) failing to call a medical expert to establish an onset date, (3) failing to properly address Plaintiff's symptom statements, and (4) failing to properly consider the non-exertional limitations by applying the grid rules at step five.

**DISCUSSION[1]**

**1.     R.A. Cline, Psy.D.**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by R.A. Cline, Psy.D. ECF No. 14 at 5-12.

The parties agree that Dr. Cline is an examining physician whose opinion is contradicted. ECF Nos. 14 at 5, 18 at 4. Therefore, the ALJ was required to provide specific and legitimate reasons for discounting his opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her]

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

interpretations and explain why they, rather than the doctors', are correct."
*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

On June 13, 2014, Dr. Cline examined Plaintiff and completed a Psychological/Psychiatric Evaluation form at the request of the Washington Department of Social and Health Services. Tr. 278-82. Dr. Cline diagnosed Plaintiff with major depressive disorder, PTSD, and methamphetamine use disorder in early full remission. Tr. 280. He opined that Plaintiff had a marked limitation in the abilities to communicate and perform effectively in a work setting and to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 280-81. He also opined that Plaintiff would have a moderate limitation in the following six abilities: (1) to understand, remember, and persist in tasks by following detailed instructions; (2) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (3) to learn new tasks; (4) to ask simple questions or request assistance; (5) to maintain appropriate behavior in a work setting; and (6) to set realistic goals and plan independently. *Id.* He also opined that Plaintiff had no limitation or a mild limitation in the remaining five areas of functioning addressed on the form. *Id.* The form defines a marked limitation as "a very significant limitation on the ability to perform one or more basic work activity," and a moderate limitation as "significant limits on the ability to perform one or more basic work activity." Tr. 280.

The ALJ gave significant weight to the opinion addressing the five abilities with a "none or mild" limitation and the six abilities with a moderate limitation. Tr. 31. The ALJ gave little weight to the portion of the opinion addressing the two abilities with a marked limitation because (1) Dr. Cline did not explain these limitations, (2) these limitations are inconsistent with Plaintiff's activities, (3) these limitations are inconsistent with the normal psychiatric observations, (4) these limitations are inconsistent with Plaintiff's performance on mental status

examinations, and (5) these limitations are inconsistent with the lack of mental health treatment. *Id*.

All five of the ALJ's reasons for rejecting Dr. Cline's opinion fail to meet the specific and legitimate standard. All five statements were conclusory and failed to state how the opined marked limitations were either unsupported or inconsistent with any other portion of the record. The ALJ was required to provide some citation to the record demonstrating how the opinion was unexplained or inconsistent with Plaintiff's activities, normal observations, performance on examinations, and the lack of treatment. A list of assertions with nothing else falls short of the specific and legitimate standard. *See Magallanes*, 881 F.2d at 751 (The ALJ is required to set out a detailed and thorough summary of the facts and conflicting clinical evidence, state her interpretation, and then make findings.); *see also Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (Boilerplate language rejecting the opinion fails to meet the specific and legitimate standard).

Defendant argues that the ALJ explained in detail how Plaintiff's activities and normal psychiatric observations were inconsistent with a finding of disability. ECF No. 18 at 7 n.2 (*citing* Tr. 28-29). Indeed, the ALJ addressed Plaintiff's activities and normal psychotic observations earlier in the opinion when addressing the reliability of Plaintiff's symptom statements. Tr. 28-29 ("The claimant's activities throughout the relevant period are inconsistent with his allegations of seriously limiting symptoms," and "The regular notations in the claimant's treatment notes of normal psychiatric observations are inconsistent with the allegations of severely limiting mental health symptoms."). Defendant cites to *Gonzalez v. Sullivan* in asserting that the ALJ should not be required to repeat his factual discussions. ECF No. 18 at 7 *citing* 914 F.2d 1197, 1200-01 (9th Cir. 1990). The Court in *Gonzalez* found that it was unnecessary to require the ALJ to state why he failed to satisfy every different section of the listing of impairments. 914 F.2d at 1201. Here, unlike when addressing the listings at step three, the Ninth

Circuit has established a heightened requirement for rejecting the opinion of an examining psychologist. *Lester*, 81 F.3d at 830-31. Additionally, the Ninth Circuit has explicitly held that the specific and legitimate standard requires some citation to evidence, the ALJ's interpretation, and then the ALJ's findings. *See Magallanes*, 881 F.2d at 751. As such the ALJ's previous citation to the record in the context of discussing the credibility of Plaintiff's symptom statements is not sufficient to meet the specific discussion required to reject Dr. Cline's opinion.

Plaintiff also argues that the ALJ erred by filing to apply the factors set forth in 20 C.F.R. § 416.927(c). ECF No. 14 at 8-9 (*citing Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)). The Ninth Circuit has recently held that a failure to address the factors set forth in 20 C.F.R. § 416.927(c)(2)-(6) "constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. These factors include the length of treatment relationship, the nature and extent of the treatment relationship, whether the physician provides support for the opinion, the consistency of the opinion with the medical evidence of record, the physician's specialization, and other factors. 20 C.F.R. § 416.927(c)(2)-(6).

Defendant is accurate in his assertion that the reasons provided by the ALJ demonstrate that she considered these factors. *See* ECF No. 18 at 8. First, Dr. Cline was not a treating source, so the factors addressing the treatment relationship are inapplicable. The ALJ's stated reasons, although lacking in the specificity required under law, address the supportability and the consistency of the opinion. Tr. 31 (The ALJ stated that the opined marked limitations were not explained and inconsistent with Plaintiff's activities, normal psychiatric observations, performance on examinations, and lack of treatment.). At best, the only unaddressed factor in the ALJ's analysis is Dr. Cline's specialization. Tr. 31. However, she did identify him as a psychologist, *Id.*, arguably meeting this factor.

Nonetheless, because the ALJ failed to provide a single reason meeting the specific and legitimate standard for rejecting Dr. Cline's opined marked

limitations, the case is to be remanded for the ALJ to readdress Dr. Cline's opinion in whole for the period prior to meeting Listing 1.04. Upon remand, she will provide legally sufficient reasons for rejecting any portion of the opinion and address the factors in 20 C.F.R. § 416.927(c) with specificity.

Plaintiff has requested that Dr. Cline's opinion be credited as true and the case remanded for an immediate award of benefits. ECF No. 14 at 12. However, the Court declines to do so because there was no vocational expert testimony addressing how the marked limitations, as defined on this form, affect the occupational base. In fact, no hypotheticals were presented to the vocational expert at all. Tr. 40-81. Additionally, the ALJ failed to call a medical expert to testify as to the date Plaintiff's cervical spine impairment reached the severity to meet listing 1.04. *See infra*. Therefore, it is unclear what time period is at issue for considering a residual functional capacity at step four.

**2. Onset Date**

Plaintiff argues that the ALJ erred by setting an onset date without evidence from a medical expert. ECF No. 14 at 18-20.

The ALJ found that Plaintiff met listing 1.04 as of April 22, 2016 based on an examination report from Dave Atteberry, M.D. Tr. 33. On April 22, 2016, Dr. Atteberry stated that Plaintiff had previously been seen by Dr. Tran in October but that his care was transferred upon Dr. Tran's leaving. Tr. 530. Dr. Atteberry reviewed an MRI of the cervical spine that showed a cervical disc herniation at the level C6-7 with osteophytic bridging that was causing forminal stenosis and with correlating symptoms on the C7 distribution. *Id*. Additionally, Dr. Atteberry observed that Plaintiff had motor weakness and a positive Tinel's sign in the left upper extremity and recommended surgery. Tr. 532. He stated that "there is a 2.3 mm central posterior disc protrusion at C6-7 causing mild effacement on the ventral surface of the thecal sac. This is what I am presuming is causing his symptoms." Tr. 531. The ALJ stated that while Dr. Tran had recommended

surgery eight months prior, "Dr. Atteberry had the opportunity to review additional evidence and his surgical recommendation was different. Based on this evidence I conclude the earliest established onset date of disability for the claimant's cervical condition is April 22, 2016." Tr. 33.

Plaintiff asserts that the ALJ erred because the MRI Dr. Atteberry reviewed was the same MRI Dr. Tran reviewed in October of 2015 and made the same physical observations. ECF No. 14 at 19-20. Plaintiff did have an MRI on October 26, 2015 showing the same "2.3 mm central posterior disc protrusion, C6-C7 causing mild effacement upon the ventral surface of the thecal sac." Tr. 464. On October 30, 2015, Dr. Tran recommended surgery, but it was for the C3-C4 and C4-C5 levels. Tr. 465. In contrast, Dr. Atteberry recommended an operation to repair the C6-C7 level of the cervical spine. Tr. 532. The record contains no separate MRI report since October 26, 2015, and Dr. Atteberry failed to assign a date to the MRI he was reviewing during the April 22, 2016 evaluation. Therefore, the record is unclear as to whether there were two separate MRIs and the change by April 22, 2016 is evidence of disease progression or if the October 30, 2015 recommendations and the April 22, 2016 recommendations are simply the result of two separate providers coming to different conclusions.

A claimant's onset date is defined as "the first day an individual is disabled as defined in the Act and the regulations." S.S.R. 83-20. In determining an onset date, the ALJ is to consider the individual's allegation, the work history, and the medical evidence. *Id.* How long a disease has existed at a specific severity level may need to be inferred based on "an informed judgment of the facts in the particular case," and the ALJ "should call on the services of a medical advisor when onset must be inferred." *Id*. The Ninth Circuit has held that "should" in S.S.R. 83-20 means "must." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). In cases, such as here, when the medical evidence is not definite concerning the onset date and medical inferences need to be made, the ALJ is

required to call upon the services of a medical expert for establishing an onset date. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). Therefore, the ALJ will call a medical expert to testify regarding the date in which Plaintiff met listing 1.04.

**3.    Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were less than fully credible prior to April 22, 2016. ECF No. 14 at 12-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to address the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements is necessary.

**4.    Step Five**

Plaintiff argues that the ALJ erred by finding Plaintiff's non-exertional limitations did not reduce the occupational base and making the step five determination for the time period prior to April 22, 2016 based on the Medical-Vocational Guidelines (Grid Rules) and not on vocational expert testimony. ECF No. 14 at 20-21.

The Grid Rules are an administrative tool on which the Commissioner must rely when considering claimants with substantially equivalent levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Ninth Circuit has recognized that significant non-exertional impairments may make reliance on the Grid Rules inappropriate. *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 577 (9th Cir. 1988). The fact that a non-exertional limitation has been alleged does not automatically preclude the application of the grids. *Id*. "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id*.

Here, the ALJ's residual functional capacity determination limited Plaintiff to light work with two non-exertional limitations: "The claimant can perform simple, routine tasks and have superficial public contact." Tr. 27. At step five, the ALJ found that these non-exertional limitations "had little or no effect on the occupational base of unskilled light work," and applied Grid Rule 202.11 in determining that other work existed in the national economy which Plaintiff could perform prior to April 22, 2016. Tr. 32.

Considering the case is being remanded for the ALJ to readdress the June 2014 opinion of Dr. Cline, a new residual functional capacity determination will be necessary for the period of time prior to Plaintiff meeting listing 1.04, and a new step five determination will be required. The ALJ is instructed to call a vocational expert to testify at any remand proceedings regarding the effect of non-exertional limitations on the occupational base.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings,

or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

As addressed above, it is not clear from the record that the ALJ would be required to find Plaintiff disabled prior to April 22, 2016 if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to readdress Dr. Cline's opinion for the period prior to meeting Listing 1.04, to call a medical expert to infer a date when Plaintiff's cervical spine impairments reached the severity sufficient to meet listing 1.04, to readdress Plaintiff's symptoms statements, and to take testimony from a vocational expert regarding a new residual functional capacity determination for the time prior to Plaintiff meeting listing 1.04. Additionally, the ALJ is instructed to supplement the record with any outstanding evidence.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 27, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE